# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| IN RE: )<br>)<br>**Carraway Methodist Health** )<br>**Systems, et al.,** )<br>      **Debtors.** ) | Case No. 06-03501-TOM-11<br>Chapter 11 |

## MEMORANDUM OPINION AND ORDER SUSTAINING OBJECTION
## TO CLAIMS OF IRON MOUNTAIN INFORMATION MANAGEMENT, INC.

This matter came before the Court for hearing on June 11, 2008 on the Class 5 Representative's First Omnibus Objection to the Allowance of Certain Claims, as amended (the "Class 5 Objection") (doc. nos. 887 and 954), the Motion for Allowance and Payment of an Administrative Expense, as amended (the "Application") (doc. nos. 937 and 959) filed by Iron Mountain Information Management, Inc. ("Iron Mountain"), the Objection of Class 3 Trustee to Motion for Allowance and Payment of Administrative Expense Filed by Iron Mountain (doc. no. 940) and the related Supplement (together the "Class 3 Objection") (doc. no. 949). Prior to the hearing, the Class 5 Representative and Iron Mountain submitted a Stipulation of Facts Regarding the Class 5 Representative's Objection to the Claim of Iron Mountain (the "Stipulation") (doc. no. 961). Following the hearing, with leave of the Court, the Class 3 Representative and Iron Mountain filed a Stipulation of Facts Regarding Iron Mountain Information Management, Inc.'s Motion for Allowance and Payment of Administrative Expense (doc. no. 963). This Court has jurisdiction under 28 U.S.C. § 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). The Court has considered the arguments of counsel, the pleadings and the law and finds and concludes as follows.[1]

---

[1] This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to contested matters pursuant to Federal Rule of Bankruptcy Procedure 9014(c).

1

**Findings of Fact[2]**

On September 18, 2006, Carraway Methodist Health Systems, Inc. and its affiliates (collectively, the "Debtors") filed for protection under Chapter 11 of Title 11. The Debtors listed Iron Mountain on Schedule F in the amount of $52,226.12 (doc. no. 51). The debt was not listed as contingent, unliquidated or disputed[3]. The address listed for Iron Mountain was P.O. Box 27128, New York, NY 10087 and the schedule reflects that Iron Mountain was a trade vendor providing records management for the Debtors.

Prior to the bankruptcy filing, the Debtors and Iron Mountain entered into that certain Storage Agreement dated August 16, 1989 under which Iron Mountain provided the Debtors with storage services related to the Debtors' files and medical records (the "Agreement"). As of the petition date, the Agreement had not expired. Additionally, as of the Petition Date, Iron Mountain stored approximately 9,462 boxes of files and medical records pursuant to the Agreement and, to date, continues to store these documents.

On September 20, 2006, the Court entered an Order Establishing Omnibus Hearing Dates and Certain Notice, Case Management and Administrative Procedures Pursuant to 11 U.S.C. §§ 102 and 105(a) and Rules 2002(m) and 9907 of the Federal Rules of Bankruptcy Procedure (the "Notice Order") (doc. no. 58). The Notice Order provides that any party filing a notice of appearance would be added to the Master Service List (as defined in the Notice Order). On September 28, 2006, Frank F. McGinn, on behalf of Iron Mountain, entered a notice of

---

[2] These finding of facts are drawn entirely from the docket and from the Stipulation submitted by the Class 5 Representative and Iron Mountain.

[3] Pursuant to Rule 3003(b)(1) of the Federal Rules of Bankruptcy Procedure (each individually a "Bankruptcy Rule"), the scheduling of the debt, when it is not disputed, unliquidated or contingent, constitutes *prima facie* evidence of the validity and amount of the claim. However, pursuant to Bankruptcy Rule 3003(c)(4) the filing of a proof of claim supersedes the scheduling of a claim. Accordingly, by filing two claims, the Iron Mountain claim, as scheduled, is no longer considered a valid claim.

appearance (doc. no. 126) and was added to the Master Service List. There is no dispute that Iron Mountain was aware of the bankruptcy case and received documents filed in the case.

On October 2, 2006, the Debtors filed a motion to approve the sale of substantially all of the Debtors' assets pursuant to Section 363(f) of the Bankruptcy Code (doc. no. 131). The sale was approved on November 8, 2006 to Physicians' Medical Center, LLC (the "Purchaser") (doc. no. 322) and closed on November 14, 2006. The Debtors continued to manage their few remaining assets as debtors-in-possession pursuant to sections 1107 and 1008 of the Bankruptcy Code.

In connection with the sale, the Debtors filed a motion to reject unexpired leases and executory contracts pursuant to section 365 of the Bankruptcy Code (the "Motion to Reject") (doc. no. 329). The motion provided that: "In their business judgment, the Debtors have determined that it is in the best interests of the Debtors, their estates and creditors to reject all executory contracts and unexpired leases, except for the following: (a) the Assigned Executory Agreements; and (b) the executory contracts and unexpired leases listed on the attached <u>Exhibit A</u> (together, the "Non-Rejected Executory Agreements"). Accordingly, the Debtors seek authority to reject all executory contracts and unexpired lease (sic) other than the Non-Rejected Executory Agreements, effective as of the Closing Date [of the sale, November 14, 2006]." The Agreement was not among the Non-Rejected Executory Agreements listed on Exhibit A to the motion to reject.

On November 29, 2006 the Court entered its order granting the Motion to Reject (doc. no. 380) in which the Court held that the "bar date for filing proofs of claim related to the Debtors' rejection" shall be January 8, 2007. Pursuant to the order, on December 1, 2006, a notice of the bar date was served on Iron Mountain via its counsel of record, as evidenced by the

3

affidavit of mailing (doc. no. 421) filed with the Court on December 15, 2006. Iron Mountain did not file a proof of claim for rejection damages prior to the January 8, 2007 deadline.

Also in connection with the sale, on November 17, 2006, the Debtors filed a motion to establish a bar date by which creditors should file administrative expense claims, other than certain professional fee claims (doc. no. 345). The motion was granted on November 29, 2006 and the Court established January 8, 2007 as the bar date for creditors to file claims pursuant to section 503, other than certain professional fee claims as set out more fully in the motion and order (doc. no. 381). Accordingly, the bar date for filing a proof of claim for administrative expenses or for rejection damages was January 8, 2007.

On January 4, 2007, prior to the bar date, Iron Mountain filed an administrative claim, claim number 369, in the amount of $83,714.35 (the "January Claim"). The January Claim was entitled "Administrative Expense Claim Request." The January Claim included $4,691.19 for post-petition storage charges and $79,022.36 in account closing costs for the expense of shredding and disposing of documents in its possession.

On March 5, 2007, the Debtors filed the Debtors' Omnibus Objection to the Allowance of Certain Administrative Expense Claims Filed Under 11 U.S.C. § 503 Other Than Claims Filed Under 11 U.S.C. § 503(b)(9) and Professional Fee Claims (the "Omnibus Objection") (doc. no. 620). In the Omnibus Objection, the Debtors objected to the claim of Iron Mountain because the "Debtors' books and records indicate that all post petition invoices have been paid. Accordingly, the claim is not entitled to an administrative expense priority under Section 503 of the Bankruptcy Code." The Omnibus Objection was set for hearing on April 9, 2007 and a notice of hearing was entered and mailed (doc. no. 631). No response was filed by Iron Mountain and no one appeared on behalf of Iron Mountain at the hearing. On April 11, 2007,

4

Case 06-03501-TOM11    Doc 972    Filed 07/23/08    Entered 07/23/08 14:31:13    Desc
Main Document      Page 4 of 12

the Court entered an Order Sustaining Debtors' Omnibus Objection (doc. no. 684) and disallowed the administrative claim of Iron Mountain. Specifically, the order provided that the claim of Iron Mountain, along with other claims listed on Exhibit A to the Omnibus Objection, were "disallowed in their entirety for all purposes in the case including, without limitation, notice, solicitation, voting and distribution."

On May 25, 2007, the Debtors' First Amended and Restated Plan of Liquidation (the "Plan") (doc. no. 677) was confirmed by this Court. Section IV of the Plan, entitled "Treatment of Executory Contracts and Unexpired Leases", provides that:

> Pursuant to section 1123(b)(2) of the Bankruptcy Code, except for those executory contracts and unexpired leases, if any, assumed pursuant to the Plan or as to which a Debtor has filed prior to the Confirmation Date a motion to assume and assign or a motion to reject, all executory contracts and unexpired leases to which any Debtor is or was a party and not previously rejected or assumed and assigned pursuant to prior order of the Bankruptcy Court, are deemed rejected pursuant to Section 365(a) of the Bankruptcy Code as of the Effective Date.
>
> Each party to an executory contract or unexpired lease rejected pursuant to the Plan (and only such entities) asserting a Claim for damages arising from such rejection shall File, not later than thirty (30) days following the Confirmation Date, a proof of such Claim; provided, however, that (1) the Bar Date established for rejection damages claims in this Section IV of the Plan shall not apply to Persons that may assert a Claim on account of an executory contract or unexpired lease that was rejected by a Debtor before Confirmation for which a prior Bar Date was established; and (2) any Person asserting a claim for rejection damages that does not timely File a proof of claim in accordance with the Plan shall be forever enjoined and barred from asserting such Claim against the Debtors, the Estates, or any property of the Estates.

Following confirmation of the Plan, on June 12, 2007, Iron Mountain filed a second claim, this time a secured, rejection damages, claim in the amount of $99,548.32, claim number 501 (the "Rejection Damages Claim"). The debt is secured by "9,462 boxes of personal property in storage and any and all other stored property." The Rejection Damages Claim consists of

5

$20,525.96 for post-petition storage charges and $79,022.36 again for account closing costs. The Rejection Damages Claim did not indicate that it was amending a previously filed proof of claim.

To date, Iron Mountain has not been paid the amounts set forth in the Rejection Damages Claim by the Purchaser and the Purchaser has disclaimed any ownership interest in or responsibility for the documents stored under the Agreement.

On February 14, 2008, the Class 5 Representative filed the Class 5 Objection objecting to the Rejection Damages Claim on the basis that it was "unsupported" and, on March 13, 2008, Iron Mountain filed a response (doc. no. 904). The Class 5 Objection and related response were set for hearing on March 28, 2008. At the hearing on March 28, 2008, the Class 5 Objection with respect to certain creditors, including Iron Mountain, was continued to April 21, 2008. At the hearing on April 21, 2008, counsel for the Class 5 Representative moved to orally amend the Class 5 Objection with respect to the Rejection Damages Claim on the grounds that the Rejection Damages Claim was late-filed. No objections were raised to the proposed oral amendment and the Court granted the oral motion and established a scheduling order (the "Scheduling Order") (doc. no. 933) giving Iron Mountain time to respond and setting everything for trial on June 11, 2008. Counsel for Iron Mountain was present at the April 21, 2008 hearing and asserted that Iron Mountain may be entitled to an administrative expense claim, as an amendment to its original January Claim, which was filed as an administrative expense claim. The Scheduling Order established April 25, 2008 as a date by which Iron Mountain was to file a written request for the administrative expense claim it asserted in open court through counsel[4].

---

[4] This date was not a new bar date but merely a filing date so that all issues relating to Iron Mountain could be submitted together following the June 11, 2008 hearing.

6

Iron Mountain did, indeed, file an "Motion for Allowance and Payment of an Administrative Expense" (the "April '08 Administrative Expense Claim")(doc. no. 937); however, it was not filed until April 28, 2008. The April '08 Administrative Expense Claim requests $127,697.70 plus accruing fees and expenses for the original $4,691.19 in storage expenses filed as part of the January Claim as well as for an additional $43,984.15 in storage expenses that have accrued since the January Claim was filed. The April '08 Administrative Expense Claim again includes $79,022.36 in costs associated with closing the account and disposing of the records.

The Scheduling Order also provided that the Class 5 Representative had until April 30, 2008 to respond and the Class 3 Representative had until May 5, 2008 to respond. On May 5, 2008, again after the deadline established by the Scheduling Order, the Class 5 Representative filed its Objection to the April '08 Administrative Expense Claim (doc. no. 940)[5]. On May 30, 2008, the Class 3 Representative supplemented its original Class 3 Objection (doc. no. 949).

## Conclusions of Law

Presently, Iron Mountain has two claims pending, the Rejection Damages Claim and the April '08 Administrative Expense Claim. The Court will deal with each claim in turn.

    **A.    Rejection Damages Claim, Claim 501**

The Court first must consider if the Rejection Damages Claim is an amendment to Iron Mountain's earlier January Claim which was filed as an administrative expense claim and disallowed pursuant to this Court's order sustaining the Debtors' Omnibus Objection. Section

7

Case 06-03501-TOM11    Doc 972    Filed 07/23/08    Entered 07/23/08 14:31:13    Desc
Main Document      Page 7 of 12

503(a) provides that an entity "may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause." The Court established January 8, 2007 as the deadline to file (1) any rejection damages arising from the order approving the motion to reject and (2) any administrative claims pursuant to 503(b) other than certain professional fee claims. Iron Mountain only filed one claim before the January 8, 2007 deadline; it chose to file an administrative expense claim and not a claim for rejection damages. An objection was filed to the claim[6] on the grounds that the post-petition charges were current, a notice of hearing was sent and received by Iron Mountain's counsel, no response was filed by Iron Mountain, no one appeared at the hearing on the Omnibus Objection and the January Claim was disallowed in its entirety and for all purposes. The order sustaining the Omnibus Objection was not appealed or challenged.

Iron Mountain argues that the Rejection Damages Claim amends the January Claim and therefore is timely as a claim for rejection damages resulting from the rejection that became effective on November 14, 2006. The Court notes at the outset that the box indicating the claim amends a previously filed claim is **not** checked on the Rejection Damages Claim[7]. The Rejection Damages Claim was filed in June 2007 as a fully secured claim and asserts that it is for rejection damages arising from the Agreement as of the Plan's effective rejection date, which Iron Mountain lists as June 5, 2007. To the extent Iron Mountain argues this claim amends the

---

[5] At the hearing no one objected to any documents as untimely pursuant to the Scheduling Order, so this Court will similarly not discuss issues not raised by the parties.

[6] Rule 3007 of the Federal Rules of Bankruptcy Procedure provides for objections to claims.

[7] The Court does, however, acknowledge that attached to the Rejection Damages Claim is a copy of the January Claim. Also, Iron Mountain altered the standard proof of claim form to read "Administrative Expense Claim Request" on the face of its January Claim in the upper right hand corner and simply altered the Rejection Damages Claim to read "Rejection Damages Claim" on the face of its Rejection Damages Claim in the upper right hand corner.

8

January Claim and is seeking rejection damages based on a June 5, 2007 rejection date, the Rejection Damages Claim filed June 12, 2007 cannot amend a claim filed in January 2007 before the alleged rejection. These two assertions by Iron Mountain are inconsistent, they suggest a June 5, 2007 rejection date and then argue their June 12, 2007 Rejection Damages Claim amends a claim filed four months before the alleged rejection. Further, the attachments to the Rejection Damages Claim and the face of the proof of claim itself are inconsistent with any argument Iron Mountain may assert that the Rejection Damages Claim is merely an amendment to the January Claim. The claims are for different claims, one is secured, one is not and, according to the claims themselves, relate to different time periods.

In addition, even though Iron Mountain argues that the Rejection Damages Claim amended the disallowed January Claim, it presented no case law and cited no code sections that would suggest that a creditor can amend a disallowed claim. Once Iron Mountain's claim was disallowed, there was nothing left to amend. In <u>In the Matter Overly-Hautz Co.</u>, the court held that once a creditor withdrew its proof of claim it could not later, after the bar date, file an amended claim to the withdrawn claim. 81 B.R. 434 (N.D. Ohio 1987). Based on the withdrawal, the court in <u>Overly-Hautz</u> held that "no proof of claim existed that could be amended." <u>Id</u>. at 437. Likewise, this Court finds that once the January Claim was disallowed, there was no claim for Iron Mountain to amend. Absent amendment, the Court finds that the Rejection Damages Claim was filed untimely and is due to be disallowed[8].

---

[8]The Court notes that neither the Debtors nor the Purchaser have sought turnover of the security being held by Iron Mountain leaving them in possession of the security.

9

Second, June 5, 2007 was not the rejection date. If Iron Mountain did not understand that its Agreement was rejected pursuant to the Motion to Reject and subsequent order, establishing January 8, 2007 as the bar date for filing a claim for rejection damages, that misunderstanding does not entitle them to file a tardy claim. A Rejection Damages Claim was to be filed by January 8, 2007 and thus Iron Mountain's Rejection Damages Claim is untimely pursuant to this Court's order approving the Motion to Reject.

Finally, any claim that Iron Mountain might assert was not affected by confirmation of the Plan. The Plan provision for filing rejection damages related only to any unexpired leases or executory contracts <u>not previously</u> rejected by the Debtors. Iron Mountain's Agreement was rejected effective November 14, 2006 pursuant to this Court's order and therefore would not fall under that particular Plan provision.

### B.     April '08 Administrative Expense Claim

Pursuant to section 503(a), "an entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause." Section III A.1(c) of the Plan entitled "General Allowance Procedures for Administrative Expense Claims Other Than Fee Claims and Goods Claims" provides:

> Pursuant to Section 502 of the Bankruptcy Code, Requests for payment of an Administrative Expense Claim...arising before the Effective Date must be filed and served on the Debtors, the Lenders, the Committee, the Class 3 Trustee, the Class 5 Representative and the Bankruptcy Administrator, pursuant to procedures set forth in the Confirmation Order, no later than thirty (30) days after the Effective Date; *provided, however,* all requests for payment of Administrative Expense Claims arising between the Filing Date and November 14, 2006 that were not filed before the January 8, 2007 Bar Date established by the Bankruptcy Court's Order of November 29, 2006 shall be denied, barred and discharged as untimely.

The April '08 Administrative Expense Claim was filed, as noted above, on April 28, 2008. The Effective Date, as defined in the Plan in section I (69), was June 5, 2007, ten months before Iron Mountain filed its April '08 Administrative Expense Claim. The April '08 Administrative Expense Claim was not timely filed, cause[9] has not been shown, and the claim therefore is due to be disallowed. Also, Iron Mountain already filed an administrative expense claim (the January Claim) and it was disallowed. Claimants are not entitled to file a claim anytime or after disallowance to avoid that disallowance.

C. Conclusion

The Court notes that, like Bankruptcy Rule 3003(c)(3) requiring that the Court fix a time to filing proofs of claims, Court ordered bar dates serve the "dual interests of finality and debtor rehabilitation." 9 Collier on Bankruptcy § 3003.03[4] (15th Ed. 2008); see also In re Charter Co., 125 B.R. 650 (M.D. Fla. 1991); In re Norris Grain Co., 131 B.R. 747 (M.D. Fla. 1990). In overturning it's prior decision to extend the bar date for ninety days, the bankruptcy court in In re Arrow Air, Inc., 75 B.R. 375 (Bankr. S.D. Fla. 1987), explained that "an essential purpose of setting a claims deadline, in this as in other reorganization cases, is to fully inform participants in the reorganization process as to the debtor's liabilities." Id. at 378. In this case, Iron Mountain's counsel filed a notice of appearance so he was receiving notice of all filed pleadings, all notices of hearings, and all orders entered. Yet, Iron Mountain failed to appear on the earlier objection to the January Claim, which resulted in the disallowance of its first filed claim. Creditors do not have unlimited time to file claims. The Court finds that to allow Iron Mountain a claim, whether

---

[9] "Cause" is not defined in the Bankruptcy Code leaving discretion with the Court; however, it is this Court's belief that the "cause" required is similar to that required under Rules 3002, 3003 and 9006.

11

for rejection damages or administrative expenses, would do disservice to the Debtors and the fundamental policy behind establishing bar dates; now therefore it is hereby

**ORDERED, ADJUDGED AND DECREED** that the Rejection Damages Claim, claim 501, is DISALLOWED in its entirety as untimely; and it is further,

**ORDERED, ADJUDGED AND DECREED** that the April '08 Administrative Expense Claim is likewise disallowed in its entirety as untimely.

Dated this the 23rd day of July, 2008.

/s/ Tamara O. Mitchell
United States Bankruptcy Judge